Filed for Record in: Rensselaer County
Recorded At: Jul 31,2015 02:29P
Type: Index Number
Doc #: 00250747
Amount: 210.00
Receipt #: 976808

STATE OF NEW YORK                    SUPREME COURT
COUNTY OF RENSSELAER

---

MICHAELA BIED,                                      :

                                      *Plaintiff,*   :        **SUMMONS**

                                                    :

            -against-                               :        **Index No.**

                                                    :        Doc #: 00250747

COUNTY OF RENSSELAER, COUNTY OF RENSSELAER          :
as sponsor of HUDSON VALLEY COMMUNITY COLLEGE,      :        <u>**Jury Trial is Demanded**</u>
HUDSON VALLEY COMMUNITY COLLEGE,                    :
HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT          :
OF PUBLIC SAFETY, ALEXANDER J. POPOVICS,            :
AMANDA J. MILLER-KALBFLESH, WENDY A. HUDY,          :
JOHN/JANE DOE NO. 1; and JOHN/JANE DOE NO. 2;       :

---

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to serve upon plaintiff's attorney a

verified answer to the verified complaint in this action within twenty days after the service of this

summons, exclusive of the day of service, or within thirty days after service is complete if this

summons is not personally delivered to you within the State of New York. In case of your failure

to answer, judgment will be taken against you by default for the relief demanded in the verified

complaint.

The basis of the venue designated is the situs/principal place of business of the

Defendants: County of Rensselaer, County of Rensselaer as sponsor of Hudson Valley

Community College, Hudson Valley Community College, Hudson Valley Community College

Department of Public Safety, and is the County in which the claims made in the verified

complaint occurred and accrued.

Dated: July 31, 2015
      Troy, New York

MATTHEW C. HUG, ESQ.
*Attorney for Plaintiff*
Rensselaer Technology Park
105 Jordan Road
Troy, New York 12180
Tel. (518) 283-3288
Facs. (518) 283-7649
E-mail: mchug@huglaw.com

Defendants' Addresses:

County of Rensselaer
1600 7th Avenue
Troy, New York 12180

County of Rensselaer as Sponsor of H.V.C.C.
1600 7th Avenue
Troy, New York 12180

Hudson Valley Community College
80 Vandenburgh Avenue
Troy, New York 12180

Hudson Valley Community College Department of Public Safety
80 Vandenburgh Avenue
Troy, New York 12180

Wendy A. Hudy
6 South Lions Avenue
Albany, New York 12203

Alexander J. Popovics
4211 Bostonian Drive
Schenectady, New York 12306

Doc #: 00250747

STATE OF NEW YORK          SUPREME COURT
COUNTY OF RENSSELAER

_____

MICHAELA BIED,

                                        *Plaintiff,*

            -against-

COUNTY OF RENSSELAER; COUNTY OF RENSSELAER
as sponsor of HUDSON VALLEY COMMUNITY COLLEGE,
HUDSON VALLEY COMMUNITY COLLEGE,
HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT
OF PUBLIC SAFETY, ALEXANDER J. POPOVICS,
AMANDA J. MILLER-KALBFIESH, WENDY A. HUDY,
JOHN/JANE DOE NO. 1; and JOHN/JANE DOE NO. 2.

_____

**VERIFIED COMPLAINT**

**Index No.**

**Jury Trial is Demanded**

Filed for Record in: Rensselaer County
Recorded Aug 31,2015 02:29P
Index Number:
Doc #: 00250747
Amount    210.00
976808

Plaintiff, Michaela Bied, by and through her attorney, Matthew C. Hug, Esq., as and for

her Verified Complaint against defendants, County of Rensselaer, County of Rensselaer as

sponsor of Hudson Valley Community College, Hudson Valley Community College, Hudson

Valley Community College Department of Public Safety, Amanda J. Miller-Kalbfiesch, Wendy

A. Hudy, Alexander J. Popovics, John Doe No. 1; and John Doe No. 2, alleges as follows:

1.  That at all times herein mentioned, Plaintiff, MICHAELA BIED, was a resident of Albany

    County, New York. She currently resides in Albany County, New York.

2.  Defendant, COUNTY OF RENSSELAER is a municipal entity created, organized,

    authorized and existing under the laws of the State of New York. It is authorized to and is

    the sponsor of Defendant HUDSON VALLEY COMMUNITY COLLEGE.

3.  Defendant COUNTY OF RENSSELAER assumes the risks incidental to the maintenance of

    HUDSON VALLEY COMMUNITY COLLEGE and the employment of its peace officers

    and security guards, professors and other personnel including its officers and directors.

4. Defendant COUNTY OF RENSSELAER was at all times relevant herein the public employer of Defendants WENDY A. HUDY, AMANDA MILLER-KALBFEISH, ALEXANDER J. POPOVICS, JOHN DOE #1 AND JOHN DOE #2.

5. Defendant, HUDSON VALLEY COMMUNITY COLLEGE is a duly accredited New York State community college, sponsored by the County of Rensselaer and is located at 80 Vandenburgh Avenue, in the City of Troy, County of Rensselaer, State of New York.

6. Defendant, HUDSON VALLEY COMMUNITY COLLEGE is organized and existing under the laws of the State of New York.

7. Defendant, HUDSON VALLEY COMMUNITY COLLEGE is authorized by law to maintain a public safety department which acts as its agent in the area of law enforcement and public safety and for which it is ultimately responsible.

8. Defendant HUDSON VALLEY COMMUNITY COLLEGE assumes the risks incidental to the maintenance of HUDSON VALLEY COMMUNITY COLLEGE and, Defendant, HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY and the employment of its peace officers and security guards, professors and other personnel.

9. Defendant HUDSON VALLEY COMMUNITY COLLEGE was at all times relevant herein the public employer of Defendants WENDY A. HUDY, AMANDA MILLER-KALBFEISH, ALEXANDER J. POPOVICS, JOHN DOE #1 AND JOHN DOE #2.

10. Defendant, HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY, is organized and existing under the laws of the State of New York, and the regulations ordinances, laws, and procedures of COUNTY OF RENSSELAER and HUDSON VALLEY COMMUNITY COLLEGE.

11. Defendant HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY assumes the risks incidental to the maintenance of HUDSON VALLEY COMMUNITY COLLEGE and, Defendant, HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY and the employment of its public safety officers, peace officers and security guards.

12. Defendant, HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY was at all times relevant herein, the public employer of Defendants AMANDA MILLER-KALBFIESH, JOHN DOE #1 and JOHN DOE #2.

13. Defendants WENDY A. HUDY, AMANDA MILLER-KALBFIESH, ALEXANDER J. POPOVICS, JOHN DOE #1 and JOHN DOE #2 are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the HUDSON VALLEY COMMUNITY COLLEGE and/or HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY.

14. At all times relevant herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York, the County of Rensselaer, Hudson Valley Community College and Hudson Valley Community College Department of Public Safety, in the course and scope of their duties and functions as officers, agents, servants and employees of Defendants COUNTY OF RENSSELAER, HUDSON VALLEY COMMUNITY COLLEGE and/or HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY, were acting for, and on behalf of, and with the power and authority vested in them by the COUNTY OF RENSSELAER, HUDSON VALLEY COMMUNITY COLLEGE and HUDSON VALLEY

COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY and were otherwise

performing and engaging in conduct incidental to the performance of their lawful functions

in the course of their duties.  They are sued individually and in their official capacities.

15. On July 31, 2014 PLAINTIFF timely filed two Notice of Claims with Mr. Stephen

Pechenick, Esq., County Attorney for the County of Rensselaer and for County of Rensselaer

as sponsor for Hudson Valley Community College, setting forth the facts underlying

PLAINTIFF's claim against COUNTY OF RENSSELAER, and COUNTY OF

RENSSELAER as sponsor for HUDSON VALLEY COMMUNITY COLLEGE.  Attached as

Exhibit 1.

16. PLAINTIFF was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on

April 9, 2015.

17. To date, no answer has been received by PLAINTIFF and no compensation has been offered

by Defendant COUNTY OF RENSSELAER or Defendant COUNTY OF RENSSELAER as

sponsor for HUDSON VALLEY COMMUNITY COLLEGE. in response to this claim.

18. This action has been commenced within one year and ninety days of the date of occurrence

of the events giving rise to this Complaint.

19. Plaintiff, suffers from a number of disabilities, including, inter alia, severe social anxiety

disorder, speech impairment, reading disability, learning disability.

20. Plaintiff's disabilities and disorders cause her to avert eye contact when speaking and she

waits for someone else to initiate conversation.  She is unable to self-advocate.

21. Plaintiff has difficulty in articulating her words, speaks in a soft voice and takes longer than

an average person to express her thoughts.

22. Her disabilities cause her to take longer than an average student to take tests and to respond to any type of tasks, including school work.

23. Due to her disabilities, PLAINTIFF was assisted at Hudson Valley Community College by the Center for Access and Assistive Technology ("CAAT").

24. Among other assistance provided by "CAAT" at the "Learning Center" on campus, Plaintiff was provided with a private place to take tests and examinations where she would receive additional time beyond what the other students in her class received.

25. Defendant HUDSON VALLEY COMMUNITY COLLEGE had actual knowledge of Plaintiff's disabilities, accepted her as a student and undertook the responsibility to assist her in her education.

26. One of the classes PLAINTIFF enrolled in during the fall 2013 semester was a financial accounting course taught by Professor WENDY A. HUDY.

27. HUDY was advised of and aware of PLAINTIFF's disabilities and the accommodations that she received from HUDSON VALLEY COMMUNITY COLLEGE.

28. Pursuant to the assistance and accommodations provided by HUDSON VALLEY COMMUNITY COLLEGE, HUDY was required to send any and all tests and examinations in the class she was teaching to the "CAAT" so that Plaintiff could take said tests in the environment provided by the "CAAT".

29. HUDY knew that Plaintiff was not to take tests in the classroom with the other students and that all of her tests were to be administered in the "CAAT"'s offices.

30. HUDY knew in the fall of 2013 that PLAINTIFF suffered from learning disabilities, social anxiety disorder, speech impairment, and other mental and emotional disabilities.

31. HUDY knew, in the fall of 2013, PLAINTIFF had difficulty communicating and was unable to self-advocate.

32. HUDY knew, in the fall of 2013, that PLAINTIFF had no friends or compatriots in the class or on campus and, was ignored and ostracized by the other students.

33. HUDY gave PLAINTIFF and Plaintiff's parents, Dr. Joseph Bied, M.D., and Kathy Bied her personal cellular telephone number and advised them that any of them could contact her directly any time so as to stay informed of her progress in the course and to address any difficulties she might have.

34. During the fall 2013 semester, HUDY sent all of PLAINTIFF'S tests for the class to the "CAAT" and that PLAINTIFF completed all of them under the supervision of the "CAAT."

35. With the accommodations provided by HUDSON VALLEY COMMUNITY COLLEGE, Plaintiff performed well in HUDY's financial accounting course and received a grade of "B" in the fall 2013 semester.

36. At the conclusion of the fall 2013 semester, PLAINTIFF enrolled in classes for the spring 2014 semester.

37. One of the classes she selected was a marketing class taught by HUDY.

38. While HUDY had seemed willing to instruct PLAINTIFF and accommodate her needs in the fall of 2013, HUDY's behavior toward PLAINTIFF changed in the Spring 2014 semester.

39. Despite the fact that HUDY knew that PLAINTIFF's disabilities had not abated from December 2013 to January 2014 and, despite the fact that HUDY knew that PLAINTIFF's tests and examinations were supposed to be sent to the "CAAT" she did not do so.

40. The reason HUDY did not do so owed to the fact that PLAINTIFF had failed to serve her with a second notice that all tests and examinations were to be sent to the "CAAT".

41. But HUDY did not advise PLAINTIFF to give her the form again and did not offer to assist PLAINTIFF.

42. Instead, HUDY abdicated any responsibility and stood silent and allowed PLAINTIFF, a student with disabilities and no friends on campus, to miss four tests in the course.

43. When PLAINTIFF learned that she had not been permitted to take the tests because, she did not perform the ministerial act of handing HUDY another notice similar to the one from the fall 2013 semester, she began to cry in the hallway in proximity to HUDY's office because she was afraid that she would fail the class.

44. PLAINTIFF felt extreme anxiety and concern with the fact that HUDY rebuffed her requests to make-up the tests and her refusal to accommodate her needs.

45. An agent, officer or employee of the HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY, called and spoke with Kathy Bied on her cellular telephone, the Plaintiff's father Joseph Bied, MD on his office phone and the St. Peter's Hospital Security Office to advise them that PLAINTIFF was crying and upset.

46. By doing so, HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY demonstrated an ability to contact PLAINTIFF's parents in the event of an emergency or if there were any issues with PLAINTIFF that needed to be addressed.

47. On March 17, 2014, PLAINTIFF and her mother, Kathy Bied met with HUDY, during which, PLAINTIFF's parents learned that the reason HUDY was not sending her tests and

examinations to the "CAAT" owed to the fact that the ministerial act of handing her the same form that she had from the fall semester had not been done.

48. During this meeting, HUDY told PLAINTIFF and her mother, Kathy Bied, that none of the other students in the class ever spoke with PLAINTIFF, that she was alone all of the time and was ostracized on campus.

49. Two days later, HUDY was in receipt of the notice to send PLAINTIFF's tests to the "CAAT."

50. Despite being aware of PLAINTIFF's disabilities and after PLAINTIFF successfully completed tests #1, #2 and #3, HUDY began playing games with PLAINTIFF's efforts to make-up the last and final missed test, test #4.

51. At one point, after the PLAINTIFF had studied for and was prepared to take test #4, HUDY decided not to let her take test #4 stating that she normally would drop a student's test with the lowest grade and even though PLAINTIFF did not take test #4 HUDY would count that as her dropped test and she should take Test # 5 which she had not studied for at the CAAT center.

52. PLAINTIFF'S father Joseph Bied, MD, upon learning that HUDY would not let the PLAINTIFF take test #4, spoke with Mrs. Martocci, Director of the CAAT office, who was emphathetic but unable to convince HUDY to let PLAINTIFF take Test #4, which she was prepared to take, and the PLAINTIFF's father also spoke with James J. Williams, Chairman of the HVCC Department of Accounting and Marketing who stated he was aware of the situation and PLAINTIFF's disability but callously agreed with HUDY's decision not to let PLAINTIFF take Test #4.

53. This unconscionable, callous and outrageous act caused PLAINTIFF to suffer further emotional distress and anxiety.

54. PLAINTIFF constantly worried that she would fail HUDY's course because, she did not take the tests.

55. HUDY began playing these games with test #4 just at the time when the date had passed where PLAINTIFF could withdraw from her class without penalty.

56. When PLAINTIFF's parents contacted HUDY to assist them in determining whether PLAINTIFF should withdraw from her class so as to avoid a negative impact on her transcripts, HUDY was recalcitrant and told them that she could not offer advice until PLAINTIFF had taken at least four exams.  But, the reason that four exams had not been graded owed to the fact that HUDY had not made the exams available.

57. This all served to increase PLAINTIFF's severe anxiety and left her in a proverbial catch-22 because, she was not getting information from HUDY as to whether she should withdraw from the class and was not being given the tests to make-up.

58. PLAINTIFF made numerous attempts to inquire as to whether she could make-up her tests but, because of her disabilities, found it impossible to do so.

59. PLAINTIFF would go to HUDY's office and passively wait in hopes of being spoken to or acknowledged by HUDY but, was repeatedly ignored.

60. PLAINTIFF would sometimes call HUDY's telephone but, would freeze and find it impossible to speak.

61. PLAINTIFF's disabilities, all of which were known to HUDSON VALLEY COMMUNITY COLLEGE, HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC

SAFETY and WENDY A. HUDY, prevents her from speaking directly to people outside of her family, keeps her from looking at people during conversation, and leaves her terrified of any social interaction.

62. It was known to HUDY that PLAINTIFF was utterly and completely harmless and never acted with malice.

63. HUDSON VALLEY COMMUNITY COLLEGE, HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY and HUDY all knew that PLAINTIFF did not drive a motor vehicle and, that PLAINTIFF"s parents drove her to school and picked her up from school each day.

64. HUDY had unconscionably created and placed PLAINTIFF in an awful position, a person HUDY knew suffered from a panoply of handicaps and disabilities that made her ill-equipped to deal with HUDY's torment.

65. HUDY then took the unconscionable step of making a complaint against PLAINTIFF to HUDSON VALLEY COMMUNITY COLLEGE and/or HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY, and claimed that PLAINTIFF was harassing and/or stalking her.

66. Members, agents, employees and/or officers with HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY approached PLAINTIFF and served her with a "Warning Pursuant to Hudson Valley Community College Campus Regulations."

67. This warning notice was signed by Defendant ALEXANDER J. POPOVICS, the Vice President for Enrollment Management and Student Development at HUDSON VALLEY COMMUNITY COLLEGE. and dated April 29, 2014.

68. Popovics, wrote that "continued stalking of Professor Hudy will result in appropriate sanctions which may include criminal charges. It is recommended that you utilize appropriate support services including the Center for Assistive Technology, Center for Counseling and Transfer and the Learning Disabilies Specialist."

69. POPOVICS did not contact PLAINTIFF's parents prior to drafting this document, that was replete with false allegations and threats of criminal prosecution.

70. And despite the fact that POPOVICS was aware of PLAINTIFF's disabilities, he did not engage in any investigation into the allegations made by HUDY, he did not try to contact PLAINTIFF or PLAINTIFF'S parents.

71. Aside from handing the document to PLAINTIFF, no attempt was made to ensure that she understood what the document meant or how she was supposed to continue taking HUDY's class.

72. And, since HUDY refused to assist PLAINTIFF in deciding whether to withdraw from her course, PLAINTIFF who was ill-equipped to deal with the situation HUDY had created became more anxious, upset and confused.

73. After the warning letter had been served upon PLAINTIFF based on HUDY's false complaint, HUDY unconscionably emailed PLAINTIFF a take-home test and instructed that it be completed and delivered to her office.

74. PLAINTIFF dutifully completed her take-home test and, on May 6, 2014 went to the HUDSON VALLEY COMMUNITY COLLEGE campus to drop the completed test off at HUDY's office.

75. While PLAINTIFF was in the vicinity of HUDY's office with her take-home test, she was approached by at least two HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY Peace Officers MILLER-KALBFIESH, JOHN DOE #1 and JOHN DOE #2.

76. Clearly MILLER-KALBFIESH and JOHN DOE #1 and/or JOHN DOE #2 were lying in wait for PLAINTIFF to arrive.

77. MILLER-KALBFIESH and JOHN DOE #1 and/or JOHN DOE #2 aggressively approached PLAINTIFF and began putting their hands on her.

78. No attempt was made to contact PLAINTIFF's parents, despite the fact that only weeks before HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY had done so.

79. PLAINTIFF was terrified and drew her hands toward her chest and stood frozen with fear.

80. Defendant MILLER-KALBFIESH placed her hands on Plaintiff's arms, tugged on her arms and attempted to pull PLAINTIFF.

81. MILLER-KALBFIESH along with JOHN DOE # 1 and/or JOHN DOE #2 then started pushing PLAINTIFF down the hallway.

82. MILLER-KALBFIESH and another officer then withdrew a knife and cut the straps off of PLAINTIFF's backpack while it was still on her back.

83. PLAINTIFF was then forcefully, physically pushed into a wheelchair.

84. Then PLAINTIFF was handcuffed.

85. The handcuffs were tightened until they caused PLAINTIFF physical pain.

86. Then, as an additional way to humiliate PLAINTIFF, MILLER-KALBFIESH and the other

    peace officers wheeled PLAINTIFF in handcuffs in the wheelchair, through the campus and

    past numerous other students and other individuals and into a parking garage.

87. When they got to the parking garage they were met by Town of North Greenbush Police

    Officer Josiah Deeb.

88. Upon information and belief, Police Officer Deeb was unnerved and outraged by the conduct

    of MILLER-KALBFIESH and the other peace officer(s) and vehemently disagreed with

    their decision to charge Plaintiff criminally.

89. Upon information and belief, the Town of North Greenbush Police Department has an

    arrangement with the HUDSON VALLEY COMMUNITY COLLEGE whereby the

    HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY

    may use North Greenbush Police Department facilities to process and book criminal suspects

    and defendants.

90. Upon information and belief, immediately upon returning to the police station, P.O. Deeb

    met with the North Greenbush Police Captain Robert Durivage.

91. Upon information and belief, P.O. Deeb advised Chief Durivage that he believed that

    MILLER-KALBFIESH and her partner(s) were acting inappropriately and that they were

    mistreating Plaintiff by arresting her and charging her criminally.

92. Upon information and belief, a decision was made by the North Greenbush Police

    Department to have no involvement with the matter.

93. But, MILLER-KALBFIESH, JOHN DOE #1 and/or JOHN DOE #2, were not dissuaded by

    the Police Department's withdrawal of any aid or participation, pressed forward and charged

PLAINTIFF with the offenses of stalking in the fourth degree, aggravated harassment in the

second degree and resisting arrest.

94. While this was taking place, PLAINTIFF's parents were frantically searching for her.

95. PLAINTIFF was always in the same place at the conclusion of the school day where her

mother, Kathy Bied, would pick her up to bring her home.

96. No one from HUDSON VALLEY COMMUNITY COLLEGE, nor HUDSON VALLEY

COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY nor any other employee,

officer or agent of either organization made any attempt to contact PLAINTIFF's parents,

despite the fact that they had done so only weeks earlier, when she was crying on campus.

97. PLAINTIFF's father, Dr. Joseph Bied, M.D., looked to his cell phone to track the

whereabouts of PLAINTIFF's phone and, shockingly observed that PLAINTIFF's cell phone

was reporting that it was far from the campus.

98. PLAINTIFF's mother, Kathy Bied after learning that the PLAINTIFF's cell phone was

tracked to a location far from campus became frantic, found a North Greenbush Police

Officer and told him that her disabled daughter, an HVCC student who had never before left

the campus during the school day, was missing and that the PLAINTIFF's father, Joseph

Bied, MD, had tracked the PLAINTIFF'S cell phone and it was reporting that it was far from

campus.

99. The police officer graciously helped her and was able to determine that PLAINTIFF had

been taken to the police station.

100. Meanwhile, PLAINTIFF was taken, in handcuffs, by HUDSON VALLEY COMMUNITY

COLLEGE DEPARTMENT OF PUBLIC SAFETY peace officers, including MILLER-

KALBFIESH from the North Greenbush Police station to the North Greenbush Town Court.

101. Plaintiff's warrantless arrest was not based upon probable cause.

102. At no point during the course of this incident did PLAINTIFF pose a threat to the safety of

anyone.

103. The conduct of Defendants, MILLER-KALBFIESH and the other peace officers, including

her arrest and detention was totally without probable cause and was done maliciously, falsely

and in bad faith.

104. At her arraignment in the Town of North Greenbush Town Court, the court issued a

temporary order of protection in favor of HUDY.

105. Upon information and belief, HUDY requested that an order of protection be issued against

PLAINTIFF.

106. Out of fear of further retributive, malicious, mean-spirited and unconscionable conduct from

HUDY and, due to the order of protection, PLAINTIFF stopped showing up at HUDY's

class and, did not finish the course.

107. Callously, HUDY gave PLAINTIFF an "F" grade for the course.

108. Ultimately, all three charges pending against PLAINTIFF were dismissed terminating the

criminal prosecution in her favor.

109. As a result of Defendants' extreme, outrageous, unconscionable and disgraceful actions,

PLAINTIFF was unable to complete coursework despite the fact that tuition had been paid

for the semester.

110. PLAINTIFF suffered withering humiliation and extreme emotional distress as a result of the
Defendants' conduct.

111. PLAINTIFF suffers from extreme emotional distress as a result of Defendants' conduct and
has not been able to return to HUDSON VALLEY COMMUNITY COLLEGE or any other
higher education institution out of fear and anxiety that has been created by Defendants.

112. PLAINTIFF suffers heightened anxiety, fear and terror about returning to HUDSON
VALLEY COMMUNITY COLLEGE or any other academic institution.

113. PLAINTIFF has spent much of the time since May 2014 in her parents house afraid to leave
and spends much of her time crying and in emotional agony.

114. PLAINTIFF suffered extreme humiliation and has been left with a crippling fear of police
and peace officers.

115. The Defendants' conduct was so outrageous in character and so extreme in degree as to go
beyond all possible bounds of decency.

116. PLAINTIFF has suffered damages and endured great embarrassment, mental and emotional
distress and anguish, has been unable to enjoy life, and has undergone and suffered severe
strain and stress, emotional trauma, physical pain, discomfort, anxiety among other things,
the effects of which will remain with her.

**VENUE**

117. Venue is proper pursuant to CPLR § 503 based upon, inter alia, the situs of the injury and is
the location of COUNTY OF RENSSELAER, HUDSON VALLEY COMMUNITY
COLLEGE and HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF
PUBLIC SAFETY.

16 of 29

## AS AND FOR A FIRST CAUSE OF ACTION
## FALSE ARREST

118. Plaintiff repeats, reiterates and realleges each and every allegation contained herein, together

   with the same force and effect as if the same were set forth more fully herein.

119. Defendants, MILLER-KALBFIESH, HUDY, JOHN DOE #1 and JOHN DOE #2 subjected

   PLAINTIFF to false arrest in violation of the laws of the State of New York, since

   PLAINTIFF was wrongfully, unlawfully, unjustifiably and forcibly detained and deprived of

   her liberty against her will.

120. The Defendants did so while acting as employees of the COUNTY OF RENSSELAER,

   HUDSON VALLEY COMMUNITY COLLEGE and/or HUDSON VALLEY COMMUNITY

   COLLEGE DEPARTMENT OF PUBLIC SAFETY, in the course of their employment and

   the scope of their authority in furtherance of the interest of their employer.

121. The Defendants intended to confine plaintiff.

122. PLAINTIFF was conscious of the confinement.

123. PLAINTIFF did not consent to the confinement.

124. The warrantless arrest was not supported by probable cause.

125. The confinement was not otherwise privileged.

126. As a direct and proximate result of the aforementioned false arrest, PLAINTIFF has

   sustained in the past, and will sustain in the future, physical injury, serious psychological and

   emotional distress, mental anguish, embarrassment and humiliation.

127. Plaintiff suffered damages as a result.

## AS AND FOR A SECOND CAUSE OF ACTION
## FALSE IMPRISONMENT

128. PLAINTIFF repeats, reiterates and realleges each and every allegation contained herein, together with the same force and effect as if the same were set forth more fully herein.

129. Defendants, HUDY, MILLER-KALBFIESH, JOHN DOE #1 and JOHN DOE #2 committed the aforementioned actions, and thereby confined PLAINTIFF without consent or privilege.

130. The aforementioned confinement was without probable cause or privilege.

131. Defendants confined PLAINTIFF in handcuffs and in a wheelchair surrounded by at least three peace officers and brought her to a parking garage.

132. PLAINTIFF did not have a reasonable means of escape based upon Defendants' conduct and the aforementioned circumstances.

133. As a direct and proximate result of the aforementioned false imprisonment, PLAINTIFF has sustained in the past, and will sustain in the future, physical injury, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.

134. PLAINTIFF was unable and continues to be unable for some time to come, to pursue her usual activities and education, all due to her physical, psychological and emotional injuries and damage.

## AS AND FOR A THIRD CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

135. Plaintiff repeats, reiterates and realleges each and every allegation contained herein, together with the same force and effect as if the same were set forth more fully herein.

136. Defendants engaged in extreme and outrageous conduct toward PLAINTIFF, a student with disabilities.

137. As alleged above, Defendants HUDY, MILLER-KALBFIESH, POVOCICS, JOHN DOE #1 and JOHN DOE # 2, knew of PLAINTIFF's disabilities and acted in an extreme, outragrous and utterly intolerable manner, all of which exceeded all reasonable bounds of decency.

138. Defendants intended to cause and/or disregarded a substantial probability of causing severe emotional distress.

139. The Defendants' conduct was the direct and proximate cause of injury and damage to PLAINTIFF and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

140. The Defendants extreme and outrageous conduct caused Plaintiff to suffer severe emotional distress.

141. As a result of the foregoing, PLAINTIFF has suffered damages and endured great embarrassment, mental and emotional distress and anguish, has been unable to enjoy life, and has undergone and suffered severe strain and stress, emotional trauma, physical pain, discomfort, anxiety among other things, the effects of which will remain with her.

## AS AND FOR A FOURTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

142. PLAINTIFF re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

143. Defendants conduct, as described and alleged herein, was careless and negligent as to the emotional health of PLAINTIFF and caused severe emotional distress to PLAINTIFF.

144.The acts and conduct of Defendants were the direct and proximate cause of injury and

damage to PLAINTIFF and violated her statutory and common law rights as guaranteed by

the laws and Constitution of the State of New York.

145.It was foreseeable that Defendants' negligent conduct would have cause PLAINTIFF'S

emotional and other harm.

146.PLAINTIFF has suffered damages and endured great embarrassment, mental and emotional

distress and anguish, has been unable to enjoy life, and has undergone and suffered severe

strain and stress, emotional trauma, physical pain, discomfort, anxiety among other things,

the effects of which will remain with her. ,

## AS AND FOR A FIFTH CAUSE OF ACTION
## ASSAULT

147.PLAINTIFF re-alleges and incorporates by reference the allegations set forth in each

preceding paragraph as if fully set forth herein.

148.By the conduct described above, Defendant AMANDA MILLER-KALBFIESH, JOHN DOE

#1 and JOHN DOE #2 inflicted the tort of assault upon PLAINTIFF.

149.The acts and conduct of Defendants MILLER KALBFIESH, JOHN DOE #1 and JOHN

DOE #2, were the direct and proximate cause of injury and damage to PLAINTIFF and

violated PLAINTIFF's statutory and common law rights as guaranteed by the laws and

Constitution of the State of New York.

150.Defendants MILLER-KALBFIESH, JOHN DOE #1 and JOHN DOE #2 intentionally

attempted to injure and/or place PLAINTIFF in apprehension of imminent harmful or

offensive contact and, further that their acts represented a grievous affront to PLAINTIFF.

151. The Defendants had the real and/or apparent ability to bring about the harmful and offensive contact.

152. The Defendants actions placed PLAINTIFF in apprehension of imminent harmful or offensive contact.

153. The actions of Defendants MILLER-KALBFIESH, JOHN DOE #1 and JOHN DOE #2 were intentional, reckless, and unwarranted, and without any just cause or provocation, and Defendants knew, or should have known, that their actions were without the consent of PLAINTIFF.

154. The injuries sustained by PLAINTIFF were caused wholly and solely by reason of the conduct described, and PLAINTIFF did not contribute thereto.

155. As a direct and proximate result of the foregoing, PLAINTIFF was subjected to great physical and emotional pain and humiliation, was deprived of her liberty, and was otherwise damaged and injured.

## AS AND FOR A SIXTH CAUSE OF ACTION
## BATTERY

156. PLAINTIFF re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

157. By the conduct described above, Defendant AMANDA MILLER-KALBFIESH, JOHN DOE #1 and JOHN DOE #2 inflicted the tort of battery upon PLAINTIFF.

158. The acts and conduct of Defendants MILLER KALBFIESH, JOHN DOE #1 and JOHN DOE #2, were the direct and proximate cause of injury and damage to PLAINTIFF and

violated PLAINTIFF's statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

159. Defendants MILLER-KALBFIESH, JOHN DOE #1 and JOHN DOE #2 acts constituted a battery upon PLAINTIFF in that the above-described bodily contact was intentional, unauthorized, and grossly offensive in nature.

160. The actions of Defendants MILLER-KALBFIESH, JOHN DOE #1 and JOHN/JANE DOE #2 were intentional, reckless, and unwarranted, and without any just cause or provocation, and Defendants knew, or should have known, that their actions were without the consent of PLAINTIFF.

161. The injuries sustained by PLAINTIFF were caused wholly and solely by reason of the conduct described, and PLAINTIFF did not contribute thereto.

162. As a direct and proximate result of the foregoing, PLAINTIFF was subjected to great physical and emotional pain and humiliation, was deprived of her liberty, and was otherwise damaged and injured.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### MALICIOUS PROSECUTION

163. PLAINTIFF re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

164. By their conduct, as described herein, Defendants are liable to Plaintiffs for having committed malicious prosecution under the laws of the State of New York.

165. Defendants, MILLER-KALBFIESH, HUDY, POPOVICS, JOHN DOE #1 and JOHN DOE #2 maliciously commenced criminal proceedings against PLAINTIFF, charging her with resisting arrest, aggravated harassment and stalking in the fourth degree.

166. Defendants falsely and without probable cause charged PLAINTIFF with violations of the laws of the State of New York.

167. The commencement and continuation of the criminal proceedings against PLAINTIFF was malicious and without probable cause.

168. All charges were terminated in PLAINTIFF'S favor.

169. Defendants, their officers, agents, servants and employees were responsible for the malicious prosecution of PLAINTIFF. Defendants COUNTY OF RENSSELAER, HUDSON VALLEY COMMUNITY COLLEGE, and HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

170. As a direct and proximate result of the misconduct and abuse of authority stated herein, PLAINTIFF suffered to great physical and emotional pain and humiliation, was deprived of her liberty, and was otherwise damaged and injured.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### EXCESSIVE FORCE

171. PLAINTIFF re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

172. The conduct and actions of Defendants AMANDA MILLER-KALBFIESH and JOHN DOE # 1 and JOHN/JANE DOE #2, acting in concert and under color of law, in authorizing,

directing and causing PLAINTIFF to be pushed, pulled, forcibly detained in a wheelchair,

cutting her backpack off of her back with a blade, tightening handcuffs on her wrists until

they caused physical pain, and walking her through campus shackled and in a wheelchair,

was excessive and unreasonable, was done intentionally, willfully, maliciously, with

deliberate indifference and/or with a reckless disregard for the natural and probable

consequences of their acts, was done without lawful justification or reason, and was designed

to and did cause specific and serious physical and emotional pain and suffering in violation

of PLAINTIFF'S rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and

Fourteenth Amendments of the United States Constitution and the counterparts in the New

York State Constitution, including the right to be free from an unreasonable seizure of her

person and the right to be free from the use of excessive, unreasonable, and unjustified force.

173.As a direct and proximate result of the foregoing, PLAINTIFF was subjected to great

physical and emotional pain and humiliation, was deprived of her liberty, and was otherwise

damaged and injured.

### AS AND FOR A NINTH CAUSE OF ACTION
### MUNCIPAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS
### *MONELL* CLAIM AGAINST THE COUNTY OF RENSSELAER - 42 U.S.C. $ 1983

174.PLAINTIFF re-alleges  and incorporates by reference the allegations set forth in each

preceding paragraph as if fully set forth herein.

175.The COUNTY OF RENSSELAER directly caused the constitutional violations suffered by

PLAINTIFF, and is liable for the damages suffered by PLAINTIFF as a result of the conduct

of the Defendants.  The conduct of the Defendant Peace Officers and HUDY was a direct

consequence of the policies and practices of the COUNTY OF RENSSELAER.

176. At all times relevant to this complaint COUNTY OF RENSSELAER, acting through

HUDSON VALLEY COMMUNITY COLLEGE and HUDSON VALLEY COMMUNITY

COLLEGE DEPARTMENT OF PUBLIC SAFETY had in effect policies, practices and

customs that condoned and fostered the unconstitutional conduct of the individual

defendants, and were a direct and proximate cause of the damages and injuries complained

of herein.

### AS AND FOR A TENTH CAUSE OF A CTION
### NEGLIGENT HIRING

177. PLAINTIFF re-alleges and incorporates by reference the allegations set forth in each

precedeing paragraph as if fully set forth herein.

178. Defendants COUNTY OF RENSSELAER, HUDSON VALLEY COMMUNITY COLLEGE

and HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY

negligently hired, trained, retained and supervised Defendants AMANDA MILLER-

KALBFIESH, JOHN DOE #1, JOHN DOE #2, HUDY and POPOVICS.

179. The acts and conduct of Defendants AMANDA MILLER-KALBFIESH, JOHN DOE #1,

JOHN DOE #2, HUDY and POPOVICS were the direct and proximate cause of injury and

damage to PLAINTIFF and violated her statutory and common law rights as guaranteed by

the laws and Constitution of the State of New York.

180. The negligent hiring, training, retention and supervision of the individual Defendants were

the direct and proximate cause of injury and damage to PLAINTIFF and violated her

statutory and common law rights as guaranteed by the laws and Constitution of the State of

New York.

181. As a result of the foregoing, PLAINTIFF was deprived of her liberty, was subject to great physical and emotional pain and suffering, and was otherwise damaged and injured.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
**RESPONDEAT SUPERIOR LIABILITY OF THE COUNTY OF RENSSELAER, HUDSON VALLEY COMMUNITY COLLEGE AND/OR HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY**

182. PLAINTIFF re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

183. The conduct of DEFENDANTS MILLER-KALBFIESH, JOHN DOE #1 and JOHN DOE #2 alleged herein occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as a peace officer/security officer with the HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY, and while they were acting as agents, officers, servants and employees of Defendants COUNTY OF RENSSELAER, HUDSON VALLEY COMMUNITY COLLEGE and HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY..

184. As a result, Defendants COUNTY OF RENSSELAER, HUDSON VALLEY COMMUNITY COLLEGE and HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT OF PUBLIC SAFETY are liable to PLAINTIFF pursuant to the state common law doctrine of respondeat superior.

185. The conduct of WENDY A. HUDY alleged herein occurred during the course and scope of her duties and functions as a professor and employee of COUNTY OF RENSSELAER and HUDSON VALLEY COMMUNITY COLLEGE. As a result, Defendants COUNTY OF

RENSSELAER and HUDSON VALLEY COMMUNITY COLLEGE are liable to

PLAINTIFF pursuant to the state common law doctrine of respondeat superior.

186. The conduct of POPOVICS alleged herein occurred during the course and scope of her

duties and functions as an officer and employee of COUNTY OF RENSSELAER and

HUDSON VALLEY COMMUNITY COLLEGE. As a result, Defendants COUNTY OF

RENSSELAER and HUDSON VALLEY COMMUNITY COLLEGE are liable to

PLAINTIFF pursuant to the state common law doctrine of respondeat superior on this and all

causes of action herein.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### PRIMA FACIE TORT

187. PLAINTIFF re-alleges and incorporates by reference the allegations set forth in each

preceding paragraph as if fully set forth herein.

188. Defendants intentionally committed the aforementioned actions against PLAINTIFF.

189. Defendants intended the aforementioned actions would cause PLAINTIFF physical and

psychological harm.

190. Defendants' aforementioned actions committed against PLAINTIFF have caused, and

continue to cause, PLAINTIFF physical injuries, pain and suffering, humiliation, depression

and emotional distress.

191. Defendants' conduct was unlawful and not justifiable under all of the circumstances.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### 42 U.S.C. § 1983 CONSPIRACY

192. PLAINTIFF re-alleges and incorporates by reference the allegations set forth in each

preceding paragraph as if fully set forth herein.

193. Defendants HUDY, MILLER-KALBFIESH, POPOVICS, JOHN DOE #1 and JOHN DOE #2, under color of law, conspired with one another to deprive PLAINTIFF of her constitutional rights, including the rights: to be free from the intentional use of unreasonable force; to be free from unreasonable searches and seizures; and to be free from false arrest and false imprisonment.

194. In furtherance of the conspiracy, Defendants engaged in the following: fabricating and contriving a complaint to serve as a warning to PLAINTIFF; creating a trap whereby PLAINTIFF would be perceived to be in violation of this warning letter; fabricating and contriving criminal charges lodged against PLAINTIFF; unconscionably and without cause, using a knife to cut PLAINTIFF's backpack off of her back, physically assaulting her in a hallway by pushing and pulling her, forcibly pushing her down into a wheelchair, handcuffing her, placing the handcuffs on so tight that they would cause physical pain and for a final flourish on their conspiracy, wheeling her across campus, shackled and in a wheelchair for all to see.

## JURY DEMAND

195. PLAINTIFF hereby demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.       An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate PLAINTIFF for all monetary and/or economic harm; for harm to her professional and personal reputations and loss of career and academic fulfillment; for all non-monetary and/or

compensatory harm, including, but not limited to, compensation for mental anguish, extreme emotional distress, emotional trauma, physical trauma, and all other monetary and/or non-monetary losses suffered by Plaintiff; and that by reason of the foregoing, Plaintiff sustained damages in a sum, pursuant to CPLR § 3017, which exceeds the jurisdictional limits of all lower courts and exceeds the minimum necessary for diversity jurisdiction in all Federal Courts which would otherwise have jurisdiction.

B.      An award of punitive damages.

C.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

D.      Such other and further relief as the Court may deem just and proper.

Dated: July 31, 2015
      Troy, New York


MATTHEW C. HUG, ESQ.
*Attorney for Plaintiff*
Rensselaer Technology Park
105 Jordan Road
Troy, New York 12180
Tel. (518) 283-3288
Facs. (518) 283-7649
E-mail: mchug@huglaw.com

STATE OF NEW YORK          SUPREME COURT
COUNTY OF RENSSELAER

---

MICHAELA BIED,

                                        *Plaintiff,*

        -against-

COUNTY OF RENSSELAER, COUNTY OF RENSSELAER
as sponsor of HUDSON VALLEY COMMUNITY COLLEGE,
HUDSON VALLEY COMMUNITY COLLEGE,
HUDSON VALLEY COMMUNITY COLLEGE DEPARTMENT
OF PUBLIC SAFETY, ALEXANDER J. POPOVICS,
AMANDA J. MILLER-KALBFIESH, WENDY A. HUDY,
JOHN/JANE DOE NO. 1; and JOHN/JANE DOE NO. 2;

---

**VERIFICATION**

**Index No.**

---

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF ALBANY       )

    Michaela Bied, being duly sworn deposes and says that deponent is the Plaintiff in this action, that deponent has read the foregoing Verified Complaint and knows the contents thereof, that the same is true to the knowledge of deponent, except as to such matters which are stated to be alleged on information and belief, and as to those matters deponent believes it to be true.

*Michaela Bied*

Michaela Bied

Sworn to before me this
31st day of July 2015

Notary Public

Julio Hernandez, III
Notary Public, State of New York
No. 02HE5001272
Qualified in Rensselaer County
My Commission Expires 11/12/2018

1 of 1

---

In the Matter of the Claim of
MICHAELA BIED,

         Claimant,

   -against-

COUNTY OF RENSSELAER,
COUNTY OF RENSSELAER as sponsor of
HUDSON VALLEY COMMUNITY COLLEGE,

        Defendants.

NOTICE OF CLAIM AND NOTICE
OF INTENTION TO COMMENCE
AN ACTION THEREON

---

**PLEASE TAKE NOTICE** that the claimant herein makes claim against

the County of Rensselaer, County of Rensselaer as sponsor of Hudson

Valley Community College, Hudson Valley Community College, Hudson

Valley Community College Department of Public Safety, Hudson Valley

Community College Board of Directors, CPO Amanda J. Miller-Kalbfiesh,

Peace Officer John/Jane Doe. 1 (believed to have a last name of

Vandenburgh), Peace Officer John Doe No. 2, and Wendy A. Hudy, for

false arrest, false imprisonment, intentional infliction of emotional

distress, negligent infliction of emotional distress, defamation,

assault, battery, malicious prosecution, excessive force, negligent

hiring, retention and supervision, civil rights violations and

conspiracy to commit those wrongs.

1. The name of the claimant is Michaela Bied.  Her address is 29

  Woodhill Road, Voorheesville, New York 12186.  Her attorney is

  Matthew C. Hug, Esq., with offices and postal address of 105 Jordan

  Road, Troy, New York 12180 and a telephone number of 518-283-3288.

2. The nature of the claims are as follows:  Claimant, Michaela Bied

  was a student, duly enrolled, attending the Hudson Valley Community

College for academic year of 2013-2014 (August 2013 start date)
Claimant had an IEP from the Voorheesville Central School District
and attended Hudson Valley in the Fall 2013 semester and the Spring
2014 semester.  She was enrolled in, among other classes, a
financial accounting class taught by Hudson Valley Community College
professor Wendy A. Hudy.  Due to claimant's learning disability and
social anxiety disorder, claimant was assisted by the Hudson Valley
Community College Center for Access and Assistive Technology
("CAAT").  She performed well in Ms. Hudy's class during the fall
2013 semester and received a grade of "B".

Hudson Valley Community College, the Public Safety Department and
Wendy A. Hudy were aware of claimant's social anxiety disorder and
other disabilities, including learning disabilities, speech impairment
and a reading disability.  The Hudson Valley Community College and
Hudy were aware of the special education plan in effect that permitted
her to take all tests, quizzes and exams at the Learning Center, where
she would be provided additional time to complete her work.

Although Prof. Hudy initially appeared willing to assist claimant
during the spring 2014 semester, things took a turn for the worse by
March 2014.  In fact, at the beginning of the spring semester, Hudy
gave claimant and claimant's parents her cellular telephone number (so
they could be kept informed of claimant's progress).  Hudy also
initially told claimant's parents to call her whenever they wished,
though claimant and her parents received contradictory information
from the CAAT and Learning Center (in which having parental

involvement was frowned upon).  Despite the fact that Hudy knew that

claimant's learning disabilities and other disabilities continued, she

did not accommodate her with respect to test taking as she did during

the previous semester.  However, despite the fact that Hudy knew

claimant was supposed to have all tests, quizes and exams sent to the

Learning Center (just as she had done the semester before), she

suddenly stopped doing it.  Rather than assisting claimant or taking a

proactive role, Hudy simply allowed claimant to miss her tests,

because Hudy was not sending them to the Learning Center.  Claimant's

parents later learned that Hudy was not accommodating claimant's

needs, because claimant had failed to perform a ministerial act of

providing her with a note that she needed to take her tests the same

way she took them before.

It was at this point that a change came over Hudy and the way she

dealt with claimant.  On or around March 13, 2013, claimant's mother

was called by the HVCC Department of Public Safety to retrieve

claimant, because she was crying on the floor in the vicinity of

Hudy's office.  It was at this time that claimant's parents learned

that her daughter had not been able to take any of her tests and was

upset by her inability to do so, her fear of failing for the semester

and the frustration of being rebuffed by Hudy.  With claimant's

parent's assistance, the ministerial act was promptly performed, but

now Hudy was putting up barriers to claimant's ability to make up her

tests.

Hudy informed claimant's mother, Kathy Bied, that none of the other students ever spoke to claimant, that she was alone all the time and essentially ostracized on campus. Nevertheless, Hudy made no effort to assist claimant in catching up on her exams. Worse, Hudy began to play a shell game with claimant, leading claimant to believe she should take tests 3 and 4 and when claimant arrived to take the tests, was told that she could take neither one of them, but could take test 5 (for which she had not yet studied, as she was under the impression she was to take tests 3 and 4). This was unconscionable even for a student without disabilities, but to do it to a student with the types of disabilities and anxiety claimant suffered from shocks the conscience. Naturally, this caused claimant to be unable to take her exams and this led to additional stress and anxiety for claimant.

She often cried and was constantly worried that she would be failed by Hudy for not taking the tests. As the date to withdraw from the class approached, claimant's concerns about Hudy's class increased. Claimant begged her to allow her to take the tests she had missed, but Hudy refused. When claimant's parents contacted Hudy in hopes of determining whether claimant should withdraw from the class or continue on (presupposing Hudy would permit her to take the tests she missed at the Learning Center), Hudy played coy and told them that claimant would not receive an indication of her grade in the class until four exams had been graded. This was placing claimant in a catch-22 — she was not being permitted to take the exams, while at the

same time, was being told that she could not make an informed decision to withdraw until she had taken and received a grade on four of them.

Hudy, various members of the HVCC staff and community as well as the Public Safety Department were aware of claimant's difficulties. Her social anxiety disorder is severe and she cannot speak directly to anyone, but close family members. She does not look at people in the eye when they speak to her and is terrified of social interactions. In addition to this, she is completely and utterly harmless. Hudy, members of the HVCC staff and community as well as the Public Safety Department are also aware of the fact that claimant does not drive a motor vehicle and that her parents drive her to school and assist her with her daily life. Moreover, as demonstrated by the fact that the Department of Public Safety called claimant's parents on March 13, 2013, they were aware not only of her disabilities, but also how to contact her parents to inform them as to any difficulties she was experiencing.

Given the situation Hudy created, with knowledge of claimant's disorders, claimant emailed her professor seeking permission to take the missed tests, and attempted to approach her on campus, but was repeatedly rebuffed. It was on the basis of a student with disabilities attempting to communicate with her professor, that Hudy filed a complaint against her and sought to have her criminally charged with the crimes of aggravated harassment (since declared unconstitutional) and stalking. It must be stressed that claimant's social anxiety disorder makes it difficult to self-advocate and often

waits for someone to notice her and begin a conversation.  In the event that the individual does not initiate, claimant will seized with anxiety and will not move.

On or about May 6, 2014, on false and overblown complaints by Hudy (that claimant was harassing and stalking her) a member of the HVCC Department of Public Safety approached claimant and demanded that she permit herself to be handcuffed.  Claimant was taken completely by surprise by this and given her disorders, panicked and held her hands close to her body.  She did not attempt to strike officers or inhibit them in anyway, instead she was clearly panicked and overwhelmed by the situation.  Nevertheless, members of the HVCC Department of Public Safety forcefully placed her in a wheelchair, right in the middle of campus for all to see, and restrained her by handcuffing her in the wheelchair, wheeled her to a peace officer's vehicle and brought her to the North Greenbush Police Department.  She was wheeled across campus in shackles.  Claimant's mother was waiting in the parking lot, in the same place she always picked up claimant.  Unbenknowst to her, claimant had been forcefully detained and arrested by a false claim by her own teacher that she was staking and harassing her.

Given her unexplained absence, claimant's mother, Kathy Bied, panicked and called claimant's cell phone, but received no answer. Claimant's father, Dr. Joseph M. Bied, M.D., who had a GPS locater installed on claimant's phone observed that the phone was some distance away from campus.  Now both Dr. Bied and Kathy Bied were terrified that claimant had either been kidnapped or had wandered off

campus. Unbeknownst to either of them, their terrified daughter had been brought to the police station in handcuffs. At no point did any member of the HVCC staff attempt to contact either Kathy or Joseph Bied to alert them as to what had happened, despite knowing the facts and circumstances; and despite having demonstrated an ability to do so before (March 13, 2014). By happenstance, Kathy located a police officer who agreed to lend his assistance. He contacted the police station in North Greenbush to determine whether there had been any missing persons reported or found, and was advised that claimant was at the police station being processed.

Claimant was ultimately charged with aggravated harassment in the second degree, stalking in the fourth degree and resisting arrest. Hudy sought and received a full stay away order of protection. As a result of the order of protection, claimant was unable to conclude the semester as she was fearful not only of violating the order of protection, but was terrified and embarrassed by the conduct of HVCC and remains unable to return to school as a result of overwhelming anxiety related to the conduct of HVCC. Her English professor, knowledgeable of the ordeal she had been put through, permitted her to finish the semester from home and she received a grade of "B." As for Hudy, she callously gave claimant an "F".

3. The circumstances regarding the time when, the place where, and the manner in which the claims arose are as follows: On or about May 6, 2014 at approximately 5:30 p.m., members of the HVCC Department of Public Safety arrested claimant and physically detained her on the

campus of HVCC.  This was based upon the false and embellished

claims of Wendy A. Hudy that were made by her during the spring of

2014 to members of the HVCC Department of Public Safety.  In

addition to this discrete period of time, the claim also extends

throughout the spring 2014 semester, at least between March and May

6, 2014, as a result of Hudy's course of conduct at the HVCC campus.

4. The items of damage or injuries include: claimant was unable to

complete the spring 2014 semester (Hudy's marketing class), despite

having paid tuition, and received an "F" from Hudy a grade that will

continue to impact her continued academic career.  She suffered

emotional harm and defamation by being forcefully detained and

falsely arrested on campus in front of professors and fellow

students.  She suffers heightened anxiety, fear and terror about

returning to HVCC or any other academic institution and may never

recommence her academic life.  She has been humiliated, embarrassed

and left with crippling fear of police, peace officers and academic

institutions.

The conduct was so outrageous in character and so extreme in

degree as to go beyond all possible bounds of decency.  As a result,

claimant has suffered damages and endured great embarrassment, mental

and emotional anguish, has been unable to enjoy life, and has been

forced to undergo and suffer severe strain and stress, the

aftereffects of which will remain with her permanently.

Said claims and demands are hereby presented for adjustment

and payment.

PLEASE TAKE FURTHER NOTICE, that in the default of the County of Rensselaer to pay to the claimant the demanded sum within the time limited for compliance with this demand by the statutes in such case made and provided, claimant intends to commence an action against the County to recover a money judgment with interest and costs.

Dated:    Troy, New York
          July 31, 2014

Respectfully yours,

Matthew C. Hug, Esq.
Attorney for claimant
Rensselaer Technology Park
105 Jordan Road
Troy, New York 12180
Tel: (518) 283-3288

7

VERIFICATION

STATE OF NEW YORK      )
                       )   ss.:
COUNTY OF RENSSELAER    )


    The undersigned, an attorney duly admitted to practice law in the Courts of the State of New York, shows that deponent is the attorney of record for the claimant herein, that deponent has read the foregoing notice of claim and knows the contents thereof; and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief and as to those matters deponent believes them to be true.  Deponent further states that the reason this verification is made by deponent and not claimant is that claimant resides outside Rensselaer County wherein deponent maintains his office for the practice of law.

_____
Matthew C. Hug, Esq.


Subscribed and sworn to before
me this 31st day of July 2014

_____
Notary Public

Julio Hernandez, III
Notary Public, State of New York
No. [illegible]
Qualified in Rensselaer County
My Commission Expires 11/2/2014

Rensselaer County & HVCC

By _____ Stephen A. Pechenik, County Atty
Received by personal delivery by

on 7/31/14

In the Matter of the Claim of
MICHAELA BIED,

                    Claimant,

   -against-

COUNTY OF RENSSELAER,
COUNTY OF RENSSELAER as sponsor of
HUDSON VALLEY COMMUNITY COLLEGE,

                    Defendants.

NOTICE OF CLAIM AND NOTICE
OF INTENTION TO COMMENCE
AN ACTION THEREON

**PLEASE TAKE NOTICE** that the claimant herein makes claim against

the County of Rensselaer, County of Rensselaer as sponsor of Hudson

Valley Community College, Hudson Valley Community College, Hudson

Valley Community College Department of Public Safety, Hudson Valley

Community College Board of Directors, CPO Amanda J. Miller-Kalbfiesh,

Peace Officer John/Jane Doe. 1 (believed to have a last name of

Vandenburgh), Peace Officer John Doe No. 2, and Wendy A. Hudy, for

false arrest, false imprisonment, intentional infliction of emotional

distress, negligent infliction of emotional distress, defamation,

assault, battery, malicious prosecution, excessive force, negligent

hiring, retention and supervision, civil rights violations and

conspiracy to commit those wrongs.

1. The name of the claimant is Michaela Bied.  Her address is 29

   Woodhill Road, Voorheesville, New York 12186.  Her attorney is

   Matthew C. Hug, Esq., with offices and postal address of 105 Jordan

   Road, Troy, New York 12180 and a telephone number of 518-283-3288.

2. The nature of the claims are as follows:  Claimant, Michaela Bied

   was a student, duly enrolled, attending the Hudson Valley Community

College for academic year of 2013-2014 (August 2013 start date)

Claimant had an IEP from the Voorheesville Central School District

and attended Hudson Valley in the Fall 2013 semester and the Spring

2014 semester.  She was enrolled in, among other classes, a

financial accounting class taught by Hudson Valley Community College

professor Wendy A. Hudy.  Due to claimant's learning disability and

social anxiety disorder, claimant was assisted by the Hudson Valley

Community College Center for Access and Assistive Technology

("CAAT").  She performed well in Ms. Hudy's class during the fall

2013 semester and received a grade of "B".

Hudson Valley Community College, the Public Safety Department and

Wendy A. Hudy were aware of claimant's social anxiety disorder and

other disabilities, including learning disabilities, speech impairment

and a reading disability.  The Hudson Valley Community College and

Hudy were aware of the special education plan in effect that permitted

her to take all tests, quizzes and exams at the Learning Center, where

she would be provided additional time to complete her work.

Although Prof. Hudy initially appeared willing to assist claimant

during the spring 2014 semester, things took a turn for the worse by

March 2014.  In fact, at the beginning of the spring semester, Hudy

gave claimant and claimant's parents her cellular telephone number (so

they could be kept informed of claimant's progress).  Hudy also

initially told claimant's parents to call her whenever they wished,

though claimant and her parents received contradictory information

from the CAAT and Learning Center (in which having parental

involvement was frowned upon).  Despite the fact that Hudy knew that
claimant's learning disabilities and other disabilities continued, she
did not accommodate her with respect to test taking as she did during
the previous semester.  However, despite the fact that Hudy knew
claimant was supposed to have all tests, quizes and exams sent to the
Learning Center (just as she had done the semester before), she
suddenly stopped doing it.  Rather than assisting claimant or taking a
proactive role, Hudy simply allowed claimant to miss her tests,
because Hudy was not sending them to the Learning Center.  Claimant's
parents later learned that Hudy was not accommodating claimant's
needs, because claimant had failed to perform a ministerial act of
providing her with a note that she needed to take her tests the same
way she took them before.

It was at this point that a change came over Hudy and the way she
dealt with claimant.  On or around March 13, 2013, claimant's mother
was called by the HVCC Department of Public Safety to retrieve
claimant, because she was crying on the floor in the vicinity of
Hudy's office.  It was at this time that claimant's parents learned
that her daughter had not been able to take any of her tests and was
upset by her inability to do so, her fear of failing for the semester
and the frustration of being rebuffed by Hudy.  With claimant's
parent's assistance, the ministerial act was promptly performed, but
now Hudy was putting up barriers to claimant's ability to make up her
tests.

Hudy informed claimant's mother, Kathy Bied, that none of the other students ever spoke to claimant, that she was alone all the time and essentially ostracized on campus. Nevertheless, Hudy made no effort to assist claimant in catching up on her exams. Worse, Hudy began to play a shell game with claimant, leadeng claimant to believe she should take tests 3 and 4 and when claimant arrived to take the tests, was told that she could take neither one of them, but could take test 5 (for which she had not yet studied, as she was under the impression she was to take tests 3 and 4). This was unconscionable even for a student without disabilities, but to do it to a student with the types of disabilities and anxiety claimant suffered from shocks the conscience. Naturally, this caused claimant to be unable to take her exams and this led to additional stress and anxiety for claimant.

She often cried and was constantly worried that she would be failed by Hudy for not taking the tests. As the date to withdraw from the class approached, claimant's concerns about Hudy's class increased. Claimant begged her to allow her to take the tests she had missed, but Hudy refused. When claimant's parents contacted Hudy in hopes of determining whether claimant should withdraw from the class or continue on (presupposing Hudy would permit her to take the tests she missed at the Learning Center), Hudy played coy and told them that claimant would not receive an indication of her grade in the class until four exams had been graded. This was placing claimant in a catch-22 — she was not being permitted to take the exams, while at the

same time, was being told that she could not make an informed decision to withdraw until she had taken and received a grade on four of them.

Hudy, various members of the HVCC staff and community as well as the Public Safety Department were aware of claimant's difficulties. Her social anxiety disorder is severe and she cannot speak directly to anyone, but close family members. She does not look at people in the eye when they speak to her and is terrified of social interactions. In addition to this, she is completely and utterly harmless. Hudy, members of the HVCC staff and community as well as the Public Safety Department are also aware of the fact that claimant does not drive a motor vehicle and that her parents drive her to school and assist her with her daily life. Moreover, as demonstrated by the fact that the Department of Public Safety called claimant's parents on March 13, 2013, they were aware not only of her disabilities, but also how to contact her parents to inform them as to any difficulties she was experiencing.

Given the situation Hudy created, with knowledge of claimant's disorders, claimant emailed her professor seeking permission to take the missed tests, and attempted to approach her on campus, but was repeatedly rebuffed. It was on the basis of a student with disabilities attempting to communicate with her professor, that Hudy filed a complaint against her and sought to have her criminally charged with the crimes of aggravated harassment (since declared unconstitutional) and stalking. It must be stressed that claimant's social anxiety disorder makes it difficult to self-advocate and often

waits for someone to notice her and begin a conversation.  In the event that the individual does not initiate, claimant will seized with anxiety and will not move.

On or about May 6, 2014, on false and overblown complaints by Hudy (that claimant was harassing and stalking her) a member of the HVCC Department of Public Safety approached claimant and demanded that she permit herself to be handcuffed.  Claimant was taken completely by surprise by this and given her disorders, panicked and held her hands close to her body.  She did not attempt to strike officers or inhibit them in anyway, instead she was clearly panicked and overwhelmed by the situation.  Nevertheless, members of the HVCC Department of Public Safety forcefully placed her in a wheelchair, right in the middle of campus for all to see, and restrained her by handcuffing her in the wheelchair, wheeled her to a peace officer's vehicle and brought her to the North Greenbush Police Department.  She was wheeled across campus in shackles.  Claimant's mother was waiting in the parking lot, in the same place she always picked up claimant.  Unbenknowst to her, claimant had been forcefully detained and arrested by a false claim by her own teacher that she was staking and harassing her.

Given her unexplained absence, claimant's mother, Kathy Bied, panicked and called claimant's cell phone, but received no answer. Claimant's father, Dr. Joseph M. Bied, M.D., who had a GPS locater installed on claimant's phone observed that the phone was some distance away from campus.  Now both Dr. Bied and Kathy Bied were terrified that claimant had either been kidnapped or had wandered off

campus.  Unbeknownst to either of them, their terrified daughter had
been brought to the police station in handcuffs.  At no point did any
member of the HVCC staff attempt to contact either Kathy or Joseph
Bied to alert them as to what had happened, despite knowing the facts
and circumstances; and despite having demonstrated an ability to do so
before (March 13, 2014).  By happenstance, Kathy located a police
officer who agreed to lend his assistance.  He contacted the police
station in North Greenbush to determine whether there had been any
missing persons reported or found, and was advised that claimant was
at the police station being processed.

Claimant was ultimately charged with aggravated harassment in the
second degree, stalking in the fourth degree and resisting arrest.
Hudy sought and received a full stay away order of protection.  As a
result of the order of protection, claimant was unable to conclude the
semester as she was fearful not only of violating the order of
protection, but was terrified and embarrassed by the conduct of HVCC
and remains unable to return to school as a result of overwhelming
anxiety related to the conduct of HVCC.  Her English professor,
knowledgeable of the ordeal she had been put through, permitted her to
finish the semester from home and she received a grade of "B."  As for
Hudy, she callously gave claimant an "F".

3. The circumstances regarding the time when, the place where, and the
   manner in which the claims arose are as follows: On or about May 6,
   2014 at approximately 5:30 p.m., members of the HVCC Department of
   Public Safety arrested claimant and physically detained her on the

campus of HVCC.  This was based upon the false and embellished
claims of Wendy A. Hudy that were made by her during the spring of
2014 to members of the HVCC Department of Public Safety.  In
addition to this discrete period of time, the claim also extends
throughout the spring 2014 semester, at least between March and May
6, 2014, as a result of Hudy's course of conduct at the HVCC campus.

4. The items of damage or injuries include: claimant was unable to
complete the spring 2014 semester (Hudy's marketing class), despite
having paid tuition, and received an "F" from Hudy a grade that will
continue to impact her continued academic career.  She suffered
emotional harm and defamation by being forcefully detained and
falsely arrested on campus in front of professors and fellow
students.  She suffers heightened anxiety, fear and terror about
returning to HVCC or any other academic institution and may never
recommence her academic life.  She has been humiliated, embarrassed
and left with crippling fear of police, peace officers and academic
institutions.

The conduct was so outrageous in character and so extreme in
degree as to go beyond all possible bounds of decency.  As a result,
claimant has suffered damages and endured great embarrassment, mental
and emotional anguish, has been unable to enjoy life, and has been
forced to undergo and suffer severe strain and stress, the
aftereffects of which will remain with her permanently.

Said claims and demands are hereby presented for adjustment
and payment.

PLEASE TAKE FURTHER NOTICE, that in the default of the County of Rensselaer to pay to the claimant the demanded sum within the time limited for compliance with this demand by the statutes in such case made and provided, claimant intends to commence an action against the County to recover a money judgment with interest and costs.

Dated:     Troy, New York
           July 31, 2014

                              Respectfully yours,


                              Matthew C. Hug, Esq.
                              Attorney for claimant
                              Rensselaer Technology Park
                              105 Jordan Road
                              Troy, New York 12180
                              Tel: (518) 283-3288

VERIFICATION

STATE OF NEW YORK      )
                       )      ss.:
COUNTY OF RENSSELAER    )


The undersigned, an attorney duly admitted to practice law in the
Courts of the State of New York, shows that deponent is the attorney
of record for the claimant herein, that deponent has read the
foregoing notice of claim and knows the contents thereof; and that the
same is true to deponent's own knowledge, except as to the matters
therein stated to be alleged on information and belief and as to those
matters deponent believes them to be true.  Deponent further states
that the reason this verification is made by deponent and not claimant
is that claimant resides outside Rensselaer County wherein deponent
maintains his office for the practice of law.


Matthew C. Hug, Esq


Subscribed and sworn to before
me this 31st day of July 2014


Notary Public


Julio Hernandez, III
Notary Public, State of New York
Qualified in Rensselaer County
My Commission Expires 11/2/2014


Rensselaer County & HVCC

By _____ Stephen A. Pechenik, County Atty

Received by personal delivery by

on 7/31/14